**SO ORDERED.**

**SIGNED this 12th day of October, 2010.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE<br>JAMES FRANKLIN FAUCETT<br>    *Debtor* | BANKR. CASE NO.<br>10-50311<br>CHAPTER 7 |
| WYNDHAM VACATION RESORTS, INC.<br>    *Plaintiff*<br>v.<br>JAMES FRANKLIN FAUCETT<br>    *Defendant* | ADV. NO. 10-05031 |

## Memorandum Decision and Order on Emergency Motion to Seal Summary Judgment Exhibits and Remove Them from PACER

Came on to be heard the Plaintiff's Emergency Motion to Seal Summary Judgment Exhibits and Remove Them from PACER. The court heard the arguments of counsel and considered evidence. This memorandum decision and order constitutes the court's findings and conclusions, and its order thereon.

### Factual Background

Faucett is a former employee of Wyndham.  In October, 2009, Wyndham brought suit against Faucett in state court seeking to essentially prevent Faucett from using certain information he had gained while employed by Wyndham to assist potential plaintiffs in bringing suit against Wyndham in connection with Wyndham's sale of time shares.

Faucett (d/b/a Advocates Against Timeshare Fraud) filed for bankruptcy in January, 2010, and Wyndham's state court case against Faucett was removed to this court, where it continued as this adversary proceeding. Wyndham had sought an injunction in the state court proceeding, as well as damages for tortious interference with contract, tortious interference with prospective relations, misappropriation of trade secrets, breach of fiduciary duty, business disparagement, trespass, violation of the Texas Theft Liability Act, breach of contract, conspiracy, and conversion. After the case was removed, Wyndham added an objection to Faucett dischargeability of any liability he might have to Wyndham. The state court had entered a temporary restraining order in favor of Wyndham. When the case was removed, this court entered an order granting an agreed permanent injunction, on essentially the same terms as those in the state court's temporary restraining order. The injunction restrained Faucett, "his officers, agents, servants, employees, attorneys, and all those in active concert or participation with him" from (among other things) "[u]sing or disclosing any of Wyndham's confidential information or trade secrets," and from "[u]sing for his own benefit or the benefit of another, any trade secret or confidential proprietary information of Wyndham."

On August 4, 2010, Faucett brought a counterclaim against Wyndham in this adversary proceeding seeking damages for defamation, tortious interference with contract, violation of the Texas Theft Liability Act and intentional infliction of emotional distress. Wyndham filed a motion to dismiss Faucett's counterclaim. On August 30 this court granted intervenors' motion to intervene in this adversary proceeding. The intervenors are clients of Faucett to whom Faucett gave Wyndham documents in order to aid intervenors in their state court suit against Wyndham. Intervenors seek a determination that they are not subject to the permanent injunction entered by this court on May 11, 2010. On September 22, 2010, Faucett filed a motion for summary judgment with regard to Wyndham's objection to Faucett's discharge. Finally, on September 15, Wyndham filed a motion to withdraw reference, seeking to have this adversary proceeding transferred back to the district court. Faucett has objected. The district court has not yet ruled.

2

The current dispute involves certain exhibits (exhibits B, C, D, K and L) that Faucett attached in support of his filed motion for summary judgment. Wyndham asserts that the documents at issue constitute confidential commercial information and should be filed under seal pursuant to 11 U.S.C. § 107(b) and removed from Pacer.

## Analysis

As an initial matter, this court has already ruled on Exhibits K and L in the Interim Order dated October 8, 2010, concluding that Exhibit K should not be sealed because it does not, according to the admission of movant, contain confidential commercial information of Wyndham (counsel for Wyndham stated that the document was not authorized to have been prepared by the salesman who evidently put it together, and did not, according to counsel, accurately state Wyndham's policy or procedures). The court sealed Exhibit L because it facially contained confidential commercial information of Wyndham, namely, customer identifying information. The Interim Order did not lay out an analysis in support of the court's ruling, but the analysis in this memorandum decision should be treated as the court's legal reasoning for ruling as it did with respect to Exhibits K and L.

We turn to the merits of Wyndham's claim that Exhibits B, C and D constitute confidential commercial information and thus should be filed under seal. Under section 107(b) of the Bankruptcy Code, the court may seal confidential information from the public record. Section 107(b) states, in relevant part,

> (b) On request of a party in interest, the bankruptcy court shall, and on bankruptcy court's own motion, the bankruptcy court may—(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information….

Bankruptcy Rule 9018, which implements section 107(b), provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information.

So, if the Exhibits at issue here fit any of the specified categories enumerated in section 107(b), this court is "required to protect a requesting interested party and has no discretion to deny the application." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (citing 2 COLLIER ON BANKRUPTCY, ¶ 107.01, at 107-2 ("Protection is mandatory when requested by an [interested party]"). Thus, the issue here is whether the exhibits at issue, exhibits B, C and D constitute trade secrets or confidential commercial information.

Confidential commercial information "has been defined as information which would cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *Orion Pictures Corp.*, 21 F.3d at 27 (quoting *Ad Hoc Protective Comm. for 10 1/2% Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)); *In re Meyrowitz*, 2006 Bankr. LEXIS 2931, at *7 (Bankr. N.D. Tex. Oct. 26, 2006). *See also In re Northstar Energy, Inc.*, 315 B.R. 425, 429 (Bankr. E.D. Tex. 2004) ("A bankruptcy court is required to seal 'documentary information filed in court that does not rise to the level of a trade secret but that is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors.'"). In *Orion Pictures*, the documents at issue consisted of a licensing agreement and other related materials. The Second Circuit affirmed the findings of the bankruptcy court, which had concluded that "disclosing the sealed information, including the overall structure, terms and conditions of the [] agreement, renders very likely a direct and adverse impairment to [defendant's] ability to negotiate favorable promotion agreements, thereby giving [defendant's] competitors an unfair advantage." *Id.* at 28. The court further held that, to be protected as confidential commercial information under section 107(b), the information did not have to rise to the level of a trade secret. *Id*; *see also In re Meyrowitz*, 2006 Bankr. LEXIS 2931, at *7. Additionally, a party seeking to seal confidential commercial documents pursuant to section 107 need not show "good cause" for the request. *See Orion Pictures*, 21 F.3d at 28 (concluding that because section 107 did not impose a good

4

cause requirement for sealing documents, the fact that the underlying information contained in the documents at issue had already been disclosed in news releases did not preclude entry of a sealing order). Nonetheless, this court must "carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" to seal the documents at issue. *Id.* at 27. The reason is simple – court records are public records, and sealing abridges the public's right to know. *See* 11 U.S.C. § 107(a); *see also In re Neal*, 461 F.3d 1048, 1052 (8th Cir. 2006) (denying a sealing request by a debtor, a state court judge with a gambling problem whose gambling debts would otherwise be revealed in her schedules); *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Gloval Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005) ("only the most compelling reasons can justify non-disclosure of judicial records"); *see generally Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) ("the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents").

Applying the standards laid out above to the case at hand, certain portions of Exhibits C and D do in fact constitute confidential commercial information, but Exhibit B does not. Exhibits C and D consist of so-called "mainframe sheets" accompanied by a series of sheets of hand-written notes. The mainframe sheets are essentially "screen shots" from the computerized records relating to Wyndham's contacts with certain customers, detailing the substance of conversations that would have been had between a Wyndham representative and a customer, regarding the availability of time share units for rental in certain time frames. The screen shots thus contain information regarding specific Wyndham customers that could be of use to Wyndham competitors, to wit, information disclosing the identity of Wyndham customers. They thus ought to enjoy protections similar to those accorded customer lists, because they contain the kind of information that justifies protecting such lists. They might give a competitor an advantage. *See Hal Wagner Studios, Inc. v. Elliot*, 2009 U.S. Dist. LEXIS 25773, at *11 (S.D. Ill. Mar. 30, 2009).

The screen shots are useful to a competitor, however, only to the extent that an actual customer's identity is revealed. Wyndham's witness admitted that, absent that identifying information, there is no use to which a competitor could put the information in the screen shots. In addition, the handwritten notes on these exhibits do not reveal any of Wyndham's confidential commercial information; they do not reveal anything about how Wyndham conducts its operations. Indeed, untied to a customer's identity, they reveal nothing at all to a competitor. To balance the competing interests of protection of confidential commercial information and the public's right to know, the correct solution is to redact the screen shot portions of Exhibits C and D to eliminate personal identification information – account numbers, names, telephone numbers, addresses, and social security or taxpayer identification numbers. All of this information is contained at the top of the screen shot, consisting of the lines showing member number, member names, phone numbers and the line that begins "Suppress Stmnt." That information accordingly must be redacted from the screen shots in both Exhibits C and D.

Exhibit B consists of a sales policy manual. Wyndham's representative testified in a conclusory fashion that he thought that disclosing Exhibit B would reveal to Wyndham's competitors how Wyndham operates, including how it trains its sale associates. However, the witness was unable to explain with any particularity just how this document would give Wyndham's competitor's such an advantage. *See Young Again Prods., Inc. v. Supplement Spot, LLC (In re Supplement Spot, LLC)*, 2009 Bankr. LEXIS 1981, at *39 (Bankr. S.D. Tex. July 8, 2009) ("Mere conclusory statements simply will not suffice to overcome the presumption of public access" contained in section 107(a)). Furthermore, the testimony revealed that Wyndham in fact does not make any particular effort to protect this information. Wyndham does require all handbooks to be returned, but the training the employee received cannot, of course, be returned, and Wyndham rarely requires its employees to sign confidentiality or non-compete agreements. What is more, employee turnover is high, with employees frequently going to work for their competitors. Wyndham

chooses (for economic reasons) not to enforce even those non-compete agreements that it does obtain. That Wyndham itself does not appear to treat the information in this document as confidential (it has not taken pains to protect it as such) cuts against a finding of confidentiality. *See Parsons v. General Motors Corp.*. 85 F.R.D. 724, 726 (N.D. Ga. 1980) (noting, as a factor that cuts against entry of a protective order, that the defendant had not controlled or limited the reproduction and circulation of the information at issue). Indeed, the fact that salesmen trained using this manual often go to work for competitors (according to Wyndham's representative), and that Wyndham takes virtually no steps to stop them from making disclosures to those competitors is strong evidence that the information in the manuals is not of a kind that would give a competitor an advantage, which is the test for protecting confidential commercial information. *See Hal Wagner Studios, Inc. v. Elliot*, 2009 U.S. Dist. LEXIS 25773, at *11 (S.D. Ill. Mar. 30, 2009).

Wyndham's real interest in seeking to have this document filed under seal seems to be to keep it out of the hands of Wyndham's customers. Indeed, the witness testified to as much, explaining that Wyndham would prefer this information not fall into the hands of customers, who could then use it against Wyndham. While Wyndham's desire to keep documents out of the hands of potential plaintiffs is certainly understandable, section 107 only protects information that would give someone else a *competitive* advantage, not a *litigation* advantage.

Wyndham raised an additional argument at the conclusion of the hearing on Wyndham's motion to seal, to the effect that all of Faucett's summary judgment exhibits must be sealed because they are subject to the Agreed Permanent Injunction entered into by the parties on May 11, 2010. Wyndham says that Faucett violated that injunction by attaching the documents to his motion. The plain language of the injunction does indeed prohibit Faucett from "(a) [u]sing or disclosing any of Wyndham's confidential information or trade secrets; [or] (b) [u]sing for his own benefit or the benefit of another, any trade secret or confidential proprietary information of Wyndham." If any of the documents attached to the motion are trade secrets or

confidential commercial information, then they ought to be treated as subject to the injunction and cannot be disclosed under the terms of the injunction. However, the relief accorded would be the same as that sought in the motion to seal – the documents' removal from the public record. Faucett's use of any *non*-confidential Wyndham documents would not be a violation of the injunction. *See Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 444 (S.D.N.Y. 1995) (noting the legitimate purpose of confidentiality agreements, but stating that "the information protected must [] be legitimately confidential").[1] Thus, it would appear that the argument regarding the injunction adds little to Wyndham's case.[2]

### Conclusion and Order

As Exhibit B is not a confidential commercial document either within the meaning of section 107 or the Agreed Permanent Injunction, it need not be filed under seal and its publication is not enjoined. The screen shots in Exhibits C and D contain some confidential commercial information, in the form of personal

---

[1] Indeed, the court notes that Wyndham's motion to seal did not claim that Exhibit B constituted confidential commercial information at all. All that the motion said about Exhibit B was that its publication "would be harmful" to Wyndham. As the court has already observed, that a given document would be harmful in the sense of exposing a party to liability for allegedly wrongful acts is not the sort of harm that section 107 was designed to prevent. *See* discussion *supra* in text.

[2] The court appreciates that other arguments *could* be made with regard to the injunction. For example, no one at this stage has before the court a motion for contempt for violation of the injunction. *See Quinn v. Anvil Corp.*, 2010 U.S. App. LEXIS 17670, at *25 (9th Cir. Aug. 24, 2010) (concluding that district court had not abused its discretion by refusing to grant relief from protective order where party seeking such relief had not filed a formal motion requesting that relief).  Similarly, the language of the injunction begs for modification given that it could be read to impair or eliminate Faucett's rights to due process. *See Innovatier, Inc. v. Cardxx, Inc.*, 2008 U.S. Dist. LEXIS 94560, at *3 (D. Colo. Nov. 13, 2008) (denying defendant's request for an injunction to constrain the review of certain documents because to do so would impair the ability of the plaintiff to make its case). There is already pending a request by Faucett to vacate the injunction, and the court will not attempt to rule on that motion before its proper presentation, it being the general rule that any modification of an injunction requires prior notice and an opportunity for hearing. *See Western Water Management v. Brown*, 40 F.3d 105, 109 (5th Cir. 1994) (stating that "a district court retains jurisdiction to modify an injunction ... under certain circumstances," but ultimately vacating district court's *sua sponte* modification of an injunction because the court had not complied with the "stringent notice requirements" for issuance of injunctive relief pursuant to FRCP 65); *but see Gambale v. Deutsche Bank AG*, 2003 U.S. Dist. LEXIS 11180, at *15-16 (S.D.N.Y. July 2, 2003) ("a court always retains the inherent power to modify or dissolve its protective orders, either *sua sponte* or on motion of a party or interested nonparty") (quoting Katkey Dore, Laurie, *Secrecy by Consent: The Use and Limits of Confidentiality in the Pursuit of Settlement*, 74 NOTRE DAME L. REV. 283, 356 (Jan. 1999)); *Poliquin v. Garden Way*, 989 F.2d 527, 535 (1st Cir. 1993) ("a protective order, like any ongoing injunction, is always subject to the inherent power of the district court to relax or terminate the order, even after judgment."); *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir. 1987) ("whether to lift or modify a protective order is a decision committed to the sound discretion of the trial court.").

identifying information of Wyndham Resorts customers. Thus, the names, telephone numbers, addresses, social security or tax identification numbers, must be redacted so that they are not visible in the public record. The redacted lines should start with the line entitled "Member" (followed by a member number) and conclude with (and include) the line entitled "Suppress Stmnt." The redaction is to be accomplished within five business days of entry of this order. The balance of Exhibits C and D are not confidential commercial information or trade secrets, and do not contain such information. They will remain in the public record.

The court's Interim Order directing that the contents of Exhibit L be removed from the public record and that Exhibit L may only be used under seal is by this order now a final order.[3] The public record shall reflect the existence of an Exhibit L to the motion for summary judgment, but shall contain the notation, "Exhibit Under Seal."

Exhibit K[4] is not a trade secret or confidential commercial information, and does not contain such information. It will remain in the public record.

Materials that do not, pursuant to the findings of this court in this order, contain trade secrets or confidential commercial information are not subject to the Agreed Permanent Injunction in this case, and their use or publication is not thereby enjoined.

# # #

---

[3] The court held two hearings. At the first hearing, the court reviewed the documents and found that Exhibit L on its face contained confidential commercial information, in the form of extensive customer information, of the sort that has traditionally enjoyed protection under section 107, and could thus be excluded without the need to take further evidence regarding the document. The court's earlier discussion in this opinion explains that such information enjoys protection, and also explains that good cause is not an element of the movant's burden, so evidence regarding prior disclosures by the movant would not be relevant if the document is otherwise appropriately protected. That logic and the cited authorities apply to the court's ruling on this exhibit.

[4] At the initial hearing, the movant stated that Exhibit K was the work of a person at Wyndham who was not authorized to make the statements or representations the document contained. As it was the position of the movant that the document did not represent Wyndham's position, the document could not be entitled to protection as confidential commercial information or a trade secret. The court thus ruled that it could not qualify for sealing under section 107, without the need for consideration of further evidence. The legal analysis in this memorandum decision supports the court's conclusion with regard to this exhibit.